UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| TERESA LANEY o/b/o | ) | |
|---|---|---|
| RICHARD LANEY | ) | |
| | ) | |
| V. | ) | NO. 2:10-CV-65 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |

REPORT AND RECOMMENDATION

The matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation following the denial of plaintiff's applications for disability insurance benefits and supplemental security income by an Administrative Law Judge ["ALJ"]. Both the plaintiff and the defendant Commissioner have filed dispositive Motions [Docs. 8 and 10].

The sole function of this Court in making this review is to determine whether the findings of the Secretary are supported by substantial evidence in the record. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Secretary's decision must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human*

*Services*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was 46 years old, a "younger individual," at the time of the ALJ's decision. He had a high school education. He had past relevant work experience as a landscape worker, which was unskilled and required medium to heavy exertion; as a carpenter, which was skilled and required medium exertion; as a cable installer, which was semi-skilled and required light exertion; and as an auctioneer, which was skilled and required light to medium exertion. [Tr. 23-24].

Plaintiff alleged that he was disabled due to physical problems and mental impairments.

Plaintiff's medical history is summarized in the plaintiff's brief as follows:

> Plaintiff underwent testing at Holston Medical Group on December 30, 2003. MRI of the lumbar spine revealed L5-S1 degenerative disc disease with minimal disc bulging; L4-L5 degenerative disc disease with minimal disc bulging, appearing superimposed upon a congenitally small canal and, in combination with some thickening of the ligamentum flavum, producing at least moderate and possibly moderately severe spinal stenosis; moderate left L4-L5 neural foraminal stenosis; and L2-L3 degenerative disc disease with minimal disc bulging, superimposed upon what appeared to be a congenitally small canal and, in combination with some thickening of the ligamentum flavum, producing upwards to moderate spinal stenosis. MRI of the cervical spine showed C6-C7 degenerative disc disease with a large left paracentral and joxtaforaminal extrusion of disc material extending well into the anticipated location of the left C7 nerve, impressing itself on the cervical spinal cord, as well as moderately severe spinal stenosis at C6-C7 (Tr. 181-185).
> Plaintiff received treatment at Blue Ridge Neuroscience Center from January 29, 2004 through April 15, 2004 (Tr. 142-177). Plaintiff first presented with severe neck pain, left shoulder pain, left upper extremity pain, and lower back pain. MRI studies were noted to show evidence of a disc protrusion on the left at C6-7. The diagnoses were cervical HNP, without myelopathy, left C6-7; cervical radiculopathy, left C7; neck pain; left shoulder impingement; and low back pain (Tr. 149-152). By February 20, 2004,

2

Plaintiff continued to experience neck pain, left upper extremity pain, and associated headaches as a result of cervical musculature spasm. Plaintiff elected to proceed with surgical intervention (Tr. 154-158). On February 24, 2004, Plaintiff underwent partial corpectomy C6, partial corpectomy C7, arthrodesis bridging C6 and C7 partial corpectomies with ulnar allograft, and anterior fixation. The postoperative diagnosis was large traumatic left C6-7 HNP superimposed over cervical spondylitic canal stenosis with left C7 radiculopathy unresponsive to conservative therapy (Tr. 142-148). On March 2, 2004, cervical spine x-rays showed status post anterior cervical discectomy and fusion at C6-7, slight disc space narrowing at C5-C6, and mild osteophyte formation at C4-5 and C5-6 (Tr. 176). During March and April 2004, Plaintiff was experiencing sleep disturbance, left trapezial pain and musculature spasm, neck pain, cervical stiffness, and back pain (Tr. 159-165).

Plaintiff returned to Holston Medical Group on November 16, 2006, with complaints of cervical neck pain radiating down between the shoulders. Exam was remarkable for tenderness to palpation of the trapezius muscles on both sides. The assessment was back pain (Tr. 178-180).

Plaintiff underwent consultative exam by Dr. Samuel Breeding on April 5, 2007. Presenting complaints included neck pain, numbness in the arms, tingling in the hands, shoulder discomfort, and inability to fully extend or supinate the left elbow secondary to history of fracture. Exam revealed reduced cervical and right elbow range of motion. The assessment was status post cervical disc fusion with residual symptoms of bilateral arm tingling and history of fracture of the right elbow with residual decreased range of motion. Dr. Breeding opined Plaintiff could lift 20 pounds occasionally; he should avoid activities with repetitive neck movement; and he may have difficulty with repetitive use of the right arm (Tr. 186-190).

On May 16, 2007, a non-examining state agency physician opined Plaintiff could lift/ carry a maximum of 50 pounds occasionally, 25 pounds frequently; could stand/walk for a total of about six hours in an eight-hour workday; and could sit for a total of about six hours in an eight-hour workday (Tr. 191-198). On November 16, 2007, a second non-examining state agency physician affirmed this assessment as written (Tr. 199).

Plaintiff continued treatment at Holston Medical Group from October 3, 2007 through January 2, 2008. Conditions and complaints addressed during this time include numbness in the hands and arms, right shoulder pain, allergic rhinitis, asthma, back pain, cervicalgia, neck pain, history of depression, headaches, reduced cervical range of motion, reduced right shoulder range of motion, and right shoulder stiffness (Tr. 200-213). On October 10, 2007, MRI of the cervical spine revealed circumferential disc bulging at C3-C4, associated with mass effect upon the anterior aspect of the subarachnoid space, as well as bilateral neuroforaminal narrowing; disc protrusion posterolaterally on the right at C5-C6, resulting in mass effect upon the right anterior aspect of the subarachnoid space; and postoperative changes at C6-C7. MRI of the right shoulder showed severe osteoarthritis, associated with large inferiorly projecting osteophytes, resulting in mass effect upon the supraspinatus muscle; focal tendinosis versus partial articular surface tear involving the conjoined portion of the supraspinatus/infraspinatus tendon at its insertion upon the greater tuberosity; and fairly extensive labral tear associated with a paralabral ganglion cyst (Tr. 205-208).

Plaintiff underwent psychological evaluation by Dr. B. Wayne Lanthorn on July

21, 2008. Plaintiff's affect was mixed; his mood was described as an agitated depression; he appeared to be on edge, was often impulsive in his responses, seemed jittery and restless, and seemed tense overall; and he openly admitted that he was extremely moody and can go from calm to very angry extremely rapidly. Plaintiff was noted to have a low frustration tolerance; to be readily distractible and have a difficult time with concentration; to have significant memory deficits; to struggle with depression and anxiety; to have transient suicidal ideation; to prefer to be alone; to be enjoying very little and experiencing significant anhedonia; to be very frustrated by his pain, inability to work, and inability to function in general; to be irritable, on edge, and difficult to be around; and to sleep fitfully due to pain, anxiety, and worries. M-FAST testing did not indicate malingering. The diagnoses were pain disorder associated with both psychological factors and general medical conditions, chronic; anxiety disorder with generalized anxiety due to chronic physical problems, pain, etc.; and mood disorder with major depressive-like episode, severe due to chronic physical problems, pain, and limitations; with a current global assessment of functioning of 50-55.

    In the body of his report, Dr. Lanthorn opined Plaintiff would have an extremely difficult time functioning in a competitive 40 hour per week job on a regular basis; he is having problems with focusing his attention, sustaining his concentration, persisting a task, etc.; it is felt that, over time, he would have a difficult time interacting with coworkers, supervisors, and the general public; and it is felt that he would not be very effective in functioning in a work setting (Tr. 214-222). In the attached Medical Assessment of Ability to do Work-Related Activities (Mental), Dr. Lanthorn opined Plaintiff had no useful ability (poor/none) to deal with work stresses, maintain attention/concentration, behave in an emotionally stable manner, relate predictably in social situations, or demonstrate reliability. Plaintiff's ability to function was noted to be seriously limited, but not precluded (fair) in the areas of follow work rules; relate to co-workers; deal with the public; use judgment with the public; interact with supervisors; function independently; understand, remember, and carry out detailed or complex job instructions; and maintain personal appearance. Dr. Lanthorn further opined Plaintiff's impairment(s) or treatment would cause him to be absent from work more than two days a month (Tr. 223-225).

Doc. 9, pgs. 2-5].

At the administrative hearing, the ALJ took the testimony of Dr. Norman Hankins, a Vocational Expert. Dr. Hankins was asked to assume that the plaintiff was 46 years old, with a high school education, and had his past relevant work experience. He was then asked to assume that the plaintiff was "restricted to light work activity which is work that requires lifting of 20 pounds occasionally and 10 pounds frequently, if you further assume the Claimant can do no jobs that require him to repetitively turn his neck or head, (and) he could

4

do no repetitive jobs with his right arm for repetitive or overhead use of his job...with those restrictions,...would there be jobs that the Claimant could perform that exist in the regional and national economy?" Dr. Hankins identified the jobs of customer service representative, data entry clerk, receptionist, and interviewer. He testified that there were 55,000 in the region and two and a half million in the nation. [Tr. 46-47].

The ALJ found that the plaintiff had severe physical impairments.[1] He found that the plaintiff did **not** have a severe mental impairment. He found that the plaintiff had the residual functional capacity to perform light work that requires no repetitive neck movements and no repetitive use of the right arm. Although he could not return to any of his past relevant work, based upon the testimony of Dr. Hankins, he found that there were a significant number of jobs which the plaintiff could perform. Accordingly, the ALJ found that he was not disabled.

Plaintiff's argument is focused and simple. He asserts that "the ALJ erred in failing to find that the plaintiff suffered from severe mental impairments and in failing to consider the effects of these impairments on plaintiff's ability to work." Doc. 9, pg. 7. The plaintiff argues that the ALJ "played doctor" by discounting the opinions of Dr. Lanthorn and substituting his own.

Proving that an impairment is "severe" has been characterized by the Sixth Circuit as a "de minimis hurdle in the disability determination process." *Higgins v. Bowen*, 880 F.2d. 860, 862 (6th Cir. 1988). In order for an impairment to be "not severe" it must be a slight

---

[1] The plaintiff's motion does not contest the ALJ's finding of the plaintiff's physical residual functional capacity. He has thus waived any challenge relating to those findings. *See Hollon v. Commissioner of Social Security*, 447 F.3d 477, 491 (6th Cir. 2006).

5

abnormality (or combination of abnormalities) that has no more than a minimal effect on the ability to do basic work activities. *Social Security Ruling 96-3p*.

The plaintiff, who had no previous medical history of mental or emotional problems, was sent to Dr. Lanthorn by his lawyer three days before the administrative hearing. Unfortunately, there is no "cutoff date" before an administrative hearing by which documentary proof must be presented. The ALJ was aware of Dr. Lanthorn's report, had read it, and described the Doctor's opinions to the VE. In his hearing decision, the ALJ dismissed Dr. Lanthorn's opinions because (1) he was a "one-time examining source, referred by the claimant's attorney," (2) because the "opinions are based solely on the claimant's subjective complaints and not objective findings," and (3) because "they are inconsistent with the overall medical evidence of record." [Tr. 20]. With the exception of a test given by Dr. Lanthorn, and Lanthorn's interpretation of the fact that plaintiff did not complete another test, all of this is basically true.

The Court does not feel that the fact that a plaintiff's attorney sends a Social Security claimant for an evaluation is any basis for rejecting, or even giving less weight, to an examiner's opinion any more than would be the case where the Commissioner obtained a consultative examination. All such opinions should be graded on their merits. That being said, the ALJ stated valid reasons for the weight he gave to Dr. Lanthorn's opinions, the most important being that they were inconsistent with the other medical evidence, because none of the other medical evidence mentioned even a complaint of any emotional problem by the plaintiff, much less diagnosis or treatment of one.

However, the ALJ chose not to have the plaintiff consultatively examined by a mental

6

health professional on behalf of the Commissioner. Instead, he gave Dr. Lanthorn's opinion no weight and found no severe mental impairment existed.

The Commissioner argues that the "time line" faced by the ALJ, with Dr. Lanthorn's examination occurring just 3 days before the scheduled hearing, placed the ALJ in an untenable situation preventing him from getting a psychological evaluation for the Commissioner. As previously stated, there is no built in "cutoff date" prior the ALJ's decision for presentation of proof for him or her to consider. Perhaps there should be. However, there was no reason for not recessing the hearing until a consultative examination could be obtained, or ordering one before the ALJ rendered his decision.

What is present in this record is a consultative exam by a qualified psychologist indicating the existence of a severe mental impairment. Granting that Dr. Lanthorn's opinions are shaky and suspect for all of the reasons outlined by the Commissioner in his brief, there is simply no contrary opinion from any mental health professional regarding the severity of the plaintiff's mental impairments. There is no evidence to "weigh" Dr. Lanthorn's opinions against.

The ALJ is not being criticized by this Court, but as the record *now* stands, the plaintiff has met the de minimis hurdle. This does not mean the plaintiff is disabled. This doesn't even mean he has a severe mental impairment. There is simply no countervailing evidence at this juncture, only the ALJ's finding that in spite of Dr. Lanthorn's opinions, the plaintiff has no mental impairment. The Commissioner's position is not substantially justified.

Accordingly, it is respectfully recommended that the case be remanded to

Commissioner for further evaluation of the plaintiff's alleged mental impairment. It is respectfully recommended that the plaintiff's Motion for Summary Judgment [Doc. 8] be GRANTED, and the defendant Commissioner's Motion for Summary Judgment [Doc. 10] be DENIED.[2]

                              Respectfully submitted:

                               s/ Dennis H. Inman
                              United States Magistrate Judge

---

[2]Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).